610 P.2d 551

The STATE of Idaho,
Plaintiff-Respondent,

v.

John HORN, Defendant-Appellant.

No. 12602.

Supreme Court of Idaho.

April 21, 1980.

Laird Stone, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SCOGGIN, Justice Pro Tem.

Appellant Horn appeals from a conviction of kidnapping and robbery.

Before midnight on December 6, 1976, Horn left a party with Royer and McGinnis, all three were intoxicated. Shortly after midnight, Cartwright, a cabdriver, responded to a request for service in the vicinity of the party. He picked up three intoxicated men, one of whom he identified as Royer. According to Royer's testimony, McGinnis threatened Cartwright with a 9 mm. automatic pistol and forced him to start driving.

Horn then demanded all of the cabdriver's money, which Cartwright gave him. Cartwright was forced to continue driving for several more blocks before he was ordered to stop the cab and the three men left. One of the men fired the pistol at the departing cab.

Cartwright immediately radioed the police. Shortly after their arrival, the police spotted three men within six blocks of where the three assailants had exited the cab. One of these men fled; the other two were arrested and were identified as McGinnis and Royer. Several minutes later, Horn was observed walking toward the police from the direction where the third man had fled. He was also arrested and searched. No incriminating evidence was found at the time of the search. Later, however a friend of Horn's found Cartwright's wallet in the pocket of Horn's jacket.

During a search of the area, the police found a spent 9 mm. shell near the spot where the three men had left the cab. A 9 mm. pistol was found within three to four feet of where the three men were first spotted by the police. Pabst Blue Ribbon beer cans, a brand that was consumed at the party, were found near the spot where the cabdriver picked up the three men. Cartwright testified that the man who had demanded the money was wearing a Levi jacket with fleece lining. Horn was wearing a down-type jacket with fleece lining.

The three men were charged with robbery and kidnapping. Royer's charges were subsequently dropped. McGinnis pled guilty to robbery; his kidnapping charge was dismissed and the State did not appeal. Horn insisted that he was not in the cab during the robbery; McGinnis corroborated his testimony. The jury, however, believed Royer, who had testified that Horn was present, and found Horn guilty of robbery and kidnapping. The judge sentenced Horn to ten years for robbery and imposed no sentence for the kidnapping conviction. Horn appeals.

Appellant Horn first argues that the district court unduly limited his discovery motion. In his motion, appellant requested, in part, copies of written, recorded, or oral statements made to peace officers, the prosecutor or his agent or "other representative of the State." Horn also urged the district court as follows:

"Defendant further moves the Court for its Order requiring that the State disclose any and all information which may assist said defendant in preparing for trial as required by State and Federal Constitutions and further that this Honorable Court make available to this defendant and his attorney, copies of all documents filed with the Court which are matters of public record." Rec. at 19–20.

The trial court eliminated the quoted language above and limited the discovery order to language paralleling I.C.R. 16.

The State has a constitutional duty to disclose to defendant exculpatory evidence material to the preparation of his case. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1979); Note, *The Prosecutor's Duty to Disclose Exculpatory Evidence*, 14 Idaho L.Rev. 223 (1977). The prosecutor's failure to disclose does not violate his constitutional duty unless the omission is of sufficent significance to deny defendant his right to a fair trial. *United States v. Agurs*, 427 U.S. at 109, 96 S.Ct. at 2400. Furthermore, there is "no constitutional requirement that the prosecutor make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). The prosecutor is, therefore, only required to disclose information favorable to defendant and material to either his guilt or punishment. *Moore v. Illinois, supra*; *see State v. Owens, supra*. Contrary to appellant's claims the State is not constitutionally compelled to "disclose any and all information which may assist said defendant in preparing for trial . . . ." Nor does the constitution require the court to facilitate defendant's preparation by compiling for him all relevant public documents.

It is unclear what appellant hoped to gain by his discovery motion. Appellant has not shown that he was prejudiced by the court's order; indeed he has not even alleged the existence of favorable evidence. As this Court will not presume errors, appellant must affirmatively show error on appeal. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). As appellant has failed to show how he was injured by the court's order and as the discovery order was well within the limits set by the constitution, we must affirm the court's action.

Appellant also argues that at the preliminary hearing the State failed to show probable cause that the appellant committed the offense. According to the appellant, only his proximity to the scene of the crime linked him with the offense.

The standard of proof required at a preliminary hearing is not as stringent as that required at the trial. At the preliminary hearing, the State need only show that a crime was committed and that there is probable cause to believe that the accused committed it; proving the accused's guilt beyond a reasonable doubt is not required. *State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1979); *State v. O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973). Once the magistrate determines that probable cause exists, a clear abuse of discretion must be shown in order to overturn the magistrate's finding. *State v. Owens, supra*; *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979).

In this case, sufficient evidence exists to support a determination that appellant probably participated in the kidnapping and robbery. Appellant attended a party in the vicinity of the crime with the two other men implicated in the crime. He left the party with these men, all were intoxicated. The victim testified that his assailants were intoxicated. Beer cans with the same label as those consumed at the party were discovered where the cabdriver first picked up the three men. When called

to the scene, police officers spotted three men, one of whom broke away from the other two and ran away. The other two, Royer and McGinnis, were arrested. Appellant was arrested when he walked toward the officers from the general direction where the third individual was last seen. McGinnis was known to have had a 9 mm. automatic pistol at the party; a 9 mm. spent shell was found near the spot where one of the men had fired at the cab; a 9 mm. automatic pistol was found three to four feet from where the police first spotted the three men. This evidence is sufficient for a reasonable person to conclude that probable cause existed to believe that appellant participated in the offense. The magistrate did not abuse his discretion in finding probable cause.

Appellant Horn next asserts that the court's refusal to dismiss the kidnapping charge denied him equal protection of the law. He argues that the State violated the equal protection clause of the Fourteenth Amendment by pursuing the kidnapping charges against appellant Horn but not against Royer and McGinnis.

▆▆▆▆ Prosecuting attorneys are vested with broad discretion in deciding when and whom to prosecute. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *State v. Wilbanks*, 95 Idaho 346, 509 P.2d 331 (1973). The exercise of that discretion does not violate the equal protection clause unless the selectivity is based on unjustifiable standards, such as race or religion, *see Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), or on improper prosecutorial motives, such as a desire to hinder defendant's first amendment rights, *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), *see United States v. Kahl*, 583 F.2d 1351 (5th Cir. 1978). In *Oyler* the Supreme Court made clear that "the conscious exercise of some selectivity in enforcement is not in itself a feder-

al constitutional violation." 368 U.S. at 456, 82 S.Ct. at 506. According to the Court, because "it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification[,] . . . grounds supporting a finding of a denial of equal protection were not alleged." *Id.*.

▆▆▆▆ In the case at bar, appellant's allegations do not satisfy the above criteria. There is no evidence that the prosecutor based his decision to prosecute them for kidnapping on improper standards or motives. Mere failure to prosecute other offenders is not sufficient by itself to support a finding of a denial of equal protection. *Cook v. City of Price*, 566 F.2d 699, 701 (10th Cir. 1977).

Appellant also argues that his simultaneous convictions of robbery and kidnapping were constitutionally and statutorily impermissible. As the kidnapping was contemporaneous with the robbery, appellant argues that he is being punished twice for the same act.[1] This arguably violates both the Double Jeopardy Clause of the United States Constitution and the Idaho multiple punishment statute.

▆▆▆▆ The Double Jeopardy Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). One function of the clause is to protect against multiple punishments for the same offense. *See Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In determining what constitutes the same offense, the Supreme Court follows the *Blockburger* rule. *See, e. g., Brown v. Ohio, supra* (applying *Blockburger* to find joyriding and auto theft are the "same offense"). In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Court stated that "where the same act or transaction consti-

---

1. The State questions how appellant is prejudiced by a conviction of kidnapping with no punishment. The additional felony on appellant's record is sufficient prejudice to permit appellant to bring this argument. *See* I.C. § 19–2514 (Idaho's Habitual Criminal Statute).

tutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Later, the Court noted that the *Blockburger* test "focuses on the statutory elements of the crime. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Ianelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1294 n.17, 43 L.Ed.2d 616.

In this case, the *Blockburger* test is satisfied. Robbery requires the taking of another's personal property, kidnapping does not. Kidnapping requires detaining a person against his will; robbery does not. *Compare* I.C. § 18–4501 (defining kidnapping) *with* I.C. § 18–6501 (defining robbery). As robbery and kidnapping each require proof of an element that the other does not, double jeopardy concerns are not relevant here.

Idaho's multiple punishment statute, I.C. § 18–301,[2] exceeds the scope of the constitutional constraints on double jeopardy. Under § 18–301 a defendant cannot be punished twice for the same *act*, rather than the same *crime*. If defendant's single action creates liability under two criminal statutes, defendant can only be punished under one statute. *See State v. Brusseau*, 96 Idaho 558, 532 P.2d 563 (1975).

In arguing that the kidnapping and robbery ensued from the same act, appellant relies on the logic of *State v. Woolard*, 259 Or. 232, 484 P.2d 314 (1971) and subsequent Oregon cases. The Oregon Supreme Court held that Woolard could not be convicted and sentenced for burglary and larceny, both of which arose out of the same criminal conduct. The Oregon rationale, however, was explicitly rejected by the Idaho Supreme Court in *State v. McCormick*,

100 Idaho 111, 594 P.2d 149 (1979). In *McCormick* this Court held that § 18–301 does not prohibit conviction and sentencing for both burglary and rape. According to the Court, the act of burglary was completed when defendant entered the home with intent to commit rape; the rape, however, was not completed until defendant forced intercourse on the victim. As the rape occurred after the completion of the burglary, the two crimes each constituted a separate act under § 18–301. This Court also looked to the temporal sequence of the crimes in determining whether § 18–301 applied in *State v. Hall*, 86 Idaho 63, 383 P.2d 602 (1963). *See also Smith v. State*, 146 Ga. App. 444, 246 S.E.2d 454 (1978); *Stalley v. State*, 91 Nev. 671, 541 P.2d 658 (1975) (Nevada Supreme Court applied temporal test to determine rape and kidnapping were separate crimes). Applying the *McCormick* test to the present case, we find that the robbery and kidnapping constituted two separate acts.

Appellant finally asserts that the evidence is not sufficient to support the verdict. A jury verdict will not be disturbed on appeal where there is substantial and competent evidence. *State v. Kellogg*, 100 Idaho 483, 600 P.2d 787 (1979); *State v. Warden*, 100 Idaho 21, 592 P.2d 836 (1979). We have reviewed the record and find substantial and competent evidence to support the verdict.

Judgment affirmed.

DONALDSON, C. J., and BAKES and McFADDEN, JJ., concur.

BISTLINE, Justice, concurring and dissenting.

I agree with all portions of the Court's opinion other than its disposition of Horn's contention that I.C. § 18-301 precludes his being punished for both kidnapping and robbery. In particular, I am troubled with

---

2. I.C. § 18–301 reads:

"An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

the sentence in the opinion which states that under that statute "a defendant cannot be punished twice for the same *act,* rather than the same *crime.*" My understanding of the law is that a person cannot be punished for any act (or omission) unless it has been made a crime—so made, in the language of the statute, and, as all know, *by a provision of this code.*

I.C. § 18–301 has been a problem to the Court, as evidenced by the three separate opinions in *State v. Brusseau,* 96 Idaho 558, 532 P.2d 563 (1975). Although the opinion of the Court in that case, a majority of three members agreeing, relied extensively on *State v. Randolph,* 61 Idaho 456, 102 P.2d 913 (1940), and its statement that "[t]he courts under [similar statutes] have held that ensuing death is a sufficient additional act . . . to prevent a plea of previous jeopardy on a prosecution of a lesser offense prior to death, from barring a subsequent prosecution for a homicide charge," *id.* at 461, 102 P.2d at 915, it does not seem to me that "mere similarity" of statutes, undiscussed and uncompared, is sufficient. The question before the Court in *Randolph* and 25 years later in *Brusseau* was the language of our own statute.

I find more logic in that which Justice Donaldson wrote in *Brusseau,* other than his belief that he preferred to forge an "assault-murder" exception to the statute—based upon a theme common to both his opinion and that of the majority that the state ought not to be expected to wait a year and a day to see if the person assaulted expires from his injuries. This rationale is not all persuasive. Where the victim's fate is in doubt, there is no reason to, and every reason not to, move so swiftly as did the prosecutors in *Randolph* and in *Brusseau.* As I pointed out in my dissent in *Stockwell v. State,* 98 Idaho 797, 573 P.2d 116 (1977), in writing of the prosecutor's statutory options to bring about a dismissal under I.C. § 19–3504, "the prosecutor might want to bring a charge of murder where the victim dies after the magistrate has bound the accused over on charges of assault. I.C. § 19–1717." 98 Idaho at 815, 573 P.2d at 134.

As a matter of actual fact, in *Randolph* the prosecutor only *two days* after filing the criminal complaint charging assault and battery, and likely upon receiving some sage advice from older practitioners, moved the court to dismiss, but inexplicably thereafter withdrew his motion. The defendant, of course, had quickly gone into court and entered a plea of guilty the very day on which he was charged. On appeal the Court's holding on jeopardy as to the assault and battery charge was a sublime equivocation, to say the least: "[J]eopardy attached probably before, or at least on, appellant's plea of guilty." 61 Idaho at 459, 102 P.2d at 914. The Court did not give any consideration to the State's right to dismiss, the motion having been withdrawn, and in what appears to be an obvious intent to "correct" the result of the prosecutor's poor judgment in having moved too swiftly, reached the conclusion that I.C. § 18–301 (then I.C.A. 17–301) did not apply where the victim later made a timely demise. It has often but truly been said that "hard cases make bad law." In *Brusseau,* the opinion of the Court went along with *Randolph* but there was more merit in Justice Donaldson's caution that the court ought not "reach a somewhat skewed interpretation" of the statute. 96 Idaho at 562, 532 P.2d at 567 (Donaldson, J., dissenting and concurring). As he points out, "[t]he act in question was Brusseau's firing the pistol at Arriola's head." 96 Idaho at 561, 532 P.2d at 566.

*Brusseau* is a clear and convincing example of a single act which the legislature has made punishable in different ways by different provisions of the criminal code. *State v. McCormick,* 100 Idaho 111, 594 P.2d 149 (1979) is an example, admittedly a close one, of two separate acts.

In Horn's case, his single act was entering a cab, and by use of threat of force both relieving the victim of his freedom and his money. Had he in the same drunken escapade shot the cab driver in order to seal his lips, then the case would be *McCormick.* Any time a defendant has wrongfully de-

tained a person of his liberty long enough to rob his pockets, the same act technically could result in charges of both kidnapping and robbery, but as soon as there is a guilty plea or conviction on either one, the defendant has been in jeopardy under the statute. Where the verdict is simultaneous, however, he may be convicted and sentenced under the penalty provisions of but one.