# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID A. BOLLINGER,
Appellant,
vs.
TIMOTHY FILSON, WARDEN, ELY
STATE PRISON; AND ADAM P.
LAXALT, NEVADA ATTORNEY
GENERAL,
Respondents.

No. 76853

FILED

FEB 13 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Second Judicial District Court, Washoe County; Kathleen M. Drakulich, Judge.

Appellant David Bollinger filed his petition more than 21 years after the remittitur issued on direct appeal on September 15, 1995. *See Bollinger v. State*, 111 Nev. 1110, 901 P.2d 671 (1995). Therefore, his petition was untimely filed. *See* NRS 34.726(1). His petition was also successive because he had previously litigated two postconviction habeas petitions.[1] *See* NRS 34.810(1)(b)(2); NRS 34.810(2). Thus, Bollinger's petition was procedurally barred absent a demonstration of good cause and actual prejudice.[2] *See* NRS 34.726(1); NRS 34.810(1)(b); NRS 34.810(3).

---

[1]*Bollinger v. State*, Docket No. 50620 (Order of Affirmance, Sept. 20, 2011); *Bollinger v. State*, Docket No. 30580 (Order Dismissing Appeal, July 28, 1998).

[2]While a petitioner may overcome the procedural bars by showing a fundamental miscarriage of justice, Bollinger does not argue or demonstrate that he will suffer a fundamental miscarriage of justice if the petition is not considered on the merits. *Clem v. State*, 119 Nev. 615, 621, 81 P.3d 521, 526 (2003).

20-06002

Bollinger argues that he demonstrated good cause to raise his first claim, challenging the reweighing determination by this court in a previous postconviction habeas appeal, because the claim was not reasonably available until the United States Supreme Court's decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016). We disagree. *See Castillo v. State*, 135 Nev., Adv. Op. 16, 442 P.3d 558 (2019) (discussing death-eligibility in Nevada and rejecting the argument that *Hurst* announced new law relevant to the weighing component of Nevada's death penalty procedures or to appellate reweighing).

Next, Bollinger argues that he had good cause to raise his second claim regarding judicial bias because it was not reasonably available until the Supreme Court's decision in *Rippo v. Baker*, 137 S. Ct. 905 (2017). We disagree because the Supreme Court did not announce a new legal standard for judicial bias in *Rippo*; rather, the Court reiterated an existing legal standard. *Id.* at 907 (citing *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 825 (1986), and *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). And Bollinger's argument that it would have been futile to raise the judicial-bias claim before the Court's decision in *Rippo* because this court would have applied the wrong standard also falls flat as a showing of good cause. As the Supreme Court has stated, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted); *see also Smith v. Murray*, 477 U.S. 527, 535 (1986) ("[I]t is the very prospect that a state court may decide, upon reflection, that the contention is valid that undergirds the established rule that perceived futility alone cannot constitute cause." (internal quotation

marks omitted)). Accordingly, we conclude the district court did not err in rejecting this good-cause argument for Bollinger's second claim.[3]

Lastly, Bollinger claims he can demonstrate good cause to raise his second claim based on newly discovered evidence. However, he fails to show that the factual basis for his claim was not reasonably available before the procedural default.

In his first state postconviction petition for a writ of habeas corpus, filed in 1996, Bollinger claimed that appellate counsel should have argued that the district attorney's motion to recuse the trial judge was inappropriate. At the evidentiary hearing on the current petition, Bollinger explained that the 1996 claim was focused on the connection between the trial judge and the district attorney's office—a situation that was reported in the news—and whether the trial judge was prejudiced against Bollinger as a result. He subsequently agreed with counsel to abandon that claim. In 2005, Bollinger filed his second state postconviction habeas petition alleging, among other claims, judicial bias and referencing media coverage and favorable rulings for the State; he also alleged that his first postconviction counsel had a conflict because of concurrent representation of Bollinger and the trial judge. These claims were found to be procedurally

---

[3]To the extent Bollinger argues that ineffective assistance of first postconviction counsel constitutes good cause for his claim of judicial bias because counsel had an alleged conflict of interest, Bollinger does not explain the delay from the time this court resolved his first postconviction appeal in 1998, *see Bollinger v. State*, Docket No. 30580 (Order Dismissing Appeal, July 28, 1998), to the filing of the instant petition in 2017. *See Hathaway v. State*, 119 Nev. 248, 252-53, 71 P.3d 503, 506 (2003) (recognizing that a claim of ineffective assistance of counsel may provide good cause but that the ineffective-assistance claim must be made in a timely fashion and is subject to the procedural bars).

barred and without good cause. In the instant petition, Bollinger alleged the trial judge was biased against him because the judge had an incentive to make favorable rulings in the State's favor during trial and made such favorable rulings on almost every issue in his case. Bollinger alleged that the media attention paid to the dispute between the judge and the district attorney was so great as to compromise the judge's ability to be fair and impartial during Bollinger's trial. After the evidentiary hearing on the instant petition, Bollinger's claim transformed from a claim of compensatory bias based on pretrial media coverage to a claim of bias based on the involvement of the district attorney's office in the federal investigation of the trial judge. Bollinger argues the testimony at the evidentiary hearing—that the district attorney's office was participating in the federal criminal investigation of the trial judge during pretrial proceedings and that one deputy had testified before a federal grand jury and was pressured by the judge and the judge's attorney to soften his testimony—is the new evidence for his current claim.

First, Bollinger has not shown that, absent an evidentiary hearing and the power to subpoena, his counsel could not have spoken to the former district attorney or deputies who cooperated with the federal investigation of the trial judge. Second, Bollinger's own exhibits demonstrate that the federal investigation and the district attorney's cooperation with it were public information before his trial. Bollinger may not have known the extent to which the district attorney's office was involved, but he has not shown that a judicial-bias claim based on the office's connection to the federal investigation was not reasonably available

to him long before 2017. Accordingly, we conclude the district court did not err in rejecting this good-cause argument for Bollinger's second claim.[4]

Having concluded no relief is warranted, we

ORDER the judgment of the district court AFFIRMED.

_____Pickering_____, C.J.
Pickering

_____Gibbons_____, J.          _____Hardesty_____, J.
Gibbons                        Hardesty

_____Parraguirre_____, J.      _____Stiglich_____, J.
Parraguirre                    Stiglich

_____Cadish_____, J.           _____Silver_____, J.
Cadish                         Silver

cc:    Hon. Kathleen M. Drakulich, District Judge
       Federal Public Defender/Las Vegas
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

---

[4]To the extent Bollinger asks this court to consider any failure by the State to respond to his arguments as a confession of error, we elect not to apply NRAP 31(d). *See Polk v. State*, 126 Nev. 180, 185, 233 P.3d 357, 360 (2010). Additionally, as Bollinger has not demonstrated good cause to excuse the procedural bars, we do not address his arguments that he can also demonstrate actual prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b); NRS 34.810(3) (collectively requiring a showing of good cause and actual prejudice).

SUPREME COURT
OF
NEVADA

(O) 1947A