IN THE SUPREME COURT OF THE STATE OF NEVADA

MARTIN MOJICA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77573

**FILED**

SEP 30 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of assault with a deadly weapon and one count each of coercion with the use of a deadly weapon and second-degree kidnapping. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

Appellant Martin Mojica became angry with his wife, Chrystal Salazar, for rebuffing his sexual advances, and left their apartment and returned later that night. Upon returning, Mojica yelled at her, punched her in the face several times, pointed a loaded gun at her while threatening to kill her, prevented her from leaving their apartment, and swung a hammer at her repeatedly while also damaging the walls and doors in the apartment. Salazar eventually managed to call the police, who arrived at the apartment and arrested Mojica. Mojica's theory of defense at trial was that he had been drinking all night, including between the time he left the apartment and returned, and he was too inebriated to form the specific intent to commit the offenses.

Following a three-day trial, the jury found Mojica guilty of assault with a deadly weapon (firearm), assault with a deadly weapon

20-35916

(hammer), coercion with the use of a deadly weapon (firearm and/or hammer), and second-degree kidnapping. Mojica now appeals.

*The district court abused its discretion when it gave a "no corroboration" instruction*

Mojica argues that the district court erred in giving a "no corroboration" instruction because the State did not charge him with a sexual offense.

"District courts have broad discretion to settle jury instructions." *Cortinas v. State*, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008). However, whether an instruction is an accurate statement of law is reviewed de novo. *Id.* We will not reverse a conviction if the error was harmless. *See* NRS 178.598 ("Any error, defect, irregularity or variance which does not affect substantial rights *shall* be disregarded." (emphasis added)).

Here, the district court instructed the jury that "[t]he testimony of a victim alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." In doing so, the district court overruled Mojica's objection that *Gaxiola v. State*, 121 Nev. 638, 119 P.3d 1225 (2005), in which this court approved the use of a similar instruction, was a sex offense case with facts distinguishable from his own. The district court found that the instruction was "an accurate statement of the law, and, for the most part, these are given in sexual assault cases, but domestic assault cases are in the same sort of general realm as, generally, a situation where it's just two people involved."

In *Gaxiola*, a case in which the defendant was charged with sexual assault and lewdness with a minor, we approved of the following instruction: "There is no requirement that the testimony of a victim of sexual offenses be corroborated, and his testimony standing alone, if

believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." *Id.* at 647, 119 P.3d at 1231-32. In affirming this "no corroboration" instruction, we relied on the explanation in *People v. Gammage*, 828 P.2d 682, 687 (Cal. 1992), for why this instruction was appropriate. *Id* at 649-50, 119 P.3d at 1233. The California Supreme Court in *Gammage* detailed that "[a]lthough the historical imbalance between victim and accused in sexual assault prosecutions has been partially redressed in recent years, there remains a continuing vitality in instructing juries that there is no legal requirement of corroboration." 828 P.2d at 687 (citation and internal quotation marks omitted) (quoted in *Gaxiola*, 121 Nev. at 649, 119 P.3d at 1233). The "historical imbalance" refers to how courts for many years provided a "Lord Hale" jury instruction in sexual offense cases, which instructed the jury to examine the complaining witness's testimony with caution because "sexual offense charges are easily made, and once made, difficult to disprove even if the defendant is innocent." *Turner v. State*, 111 Nev. 403, 403, 892 P.2d 579, 579 (1995); *Gammage*, 828 P.2d at 683. We no longer permit "Lord Hale" instructions in Nevada. *See Turner*, 111 Nev. at 404, 892 P.2d at 580. In order to counterbalance the effect of the "Lord Hale" instruction and redress the possible harm that had come from long-term use of that instruction, the "no corroboration" instruction was given to clarify for the jury that a complaining witness's testimony was sufficient to support a conviction. *Gammage*, 828 P.2d at 687.

In light of the reasoning in *Gaxiola* and *Gammage* and the fact that the instruction approved of in *Gaxiola* was specific to sexual offenses, the "no corroboration" instruction should not have been given here where there was no sexual offense charged. Though the State contends that we have "not limited *Gaxiola* [i]nstructions to sex assault cases," the State fails

to provide any legal support for this argument, and we have found no binding precedent either in Nevada or elsewhere[1] that extends "no corroboration" instructions beyond sexual offenses. Accordingly, we conclude that the district court abused its discretion when it overruled Mojica's objection and provided the jury with a "no corroboration" instruction.[2]

*The district court's instructional error is harmless and therefore does not require reversal*

The State made no argument about harmlessness in its answering brief on appeal, but Mojica failed to assert that the State's failure resulted in a confession of error in his reply brief. *See Polk v. State*, 126 Nev. 180, 184-86, 233 P.3d 357, 360-61 (2010) (treating the State's failure

---

[1]In addition to California, there are several other States that approve of "no corroboration" instructions. *See, e.g., State v. Daniel W. E.*, 142 A.3d 265, 275 (Conn. 2016) (holding a "no corroboration" instruction "accurately portrayed the law and did not mislead the jury"); *Stallworth v. State*, 258 S.E.2d 611, 612 (Ga. Ct. App. 1979) (stating that the trial court properly instructed the jury on the issue of corroboration in light of the fact that Georgia law does not require corroboration of victim's testimony in rape cases); *People v. Smith*, 385 N.W.2d 654, 657 (Mich. Ct. App. 1986) (permitting the "no corroboration" instruction); *Pitts v. State*, 291 So. 2d 751, 758 (Miss. 2020) (concluding a "no corroboration" instruction is "an accurate statement of the law applicable to this case and did not improperly comment on the evidence"); *State v. Marti*, 732 A.2d 414, 421 (N.H. 1999) (reasoning a "no corroboration" jury instruction is permitted as it is a correct statement of law); *State v. Zimmerman*, 121 P.3d 1216, 1221-22 (Wash. Ct. App. 2005) (concluding that a "no corroboration" instruction that accurately states the applicable law is not a comment on the evidence and is not improper).

[2]Mojica alternatively argues that the "no corroboration" instruction is improper in any case and asks this court to overturn *Gaxiola*. Given our agreement that the instruction was improper in his case, we need not consider this argument.

to respond to a significant constitutional issue raised by appellant as a confession of error); *see also* NRAP 31(d)(2) ("The failure of respondent to file a brief may be treated by the court as a confession of error . . . ."). Though the State has the burden of proving the error was harmless, we nevertheless conclude that sua sponte harmlessness review is warranted and that the instructional error was harmless. *See Belcher v. State*, 136 Nev., Adv. Op. 31, 464 P.3d 1013, 1024 (2020) (applying the following three factors in determining whether to sua sponte review for harmlessness: "(1) the length and complexity of the record, (2) whether the harmlessness of an error is certain or debatable, and (3) the futility and costliness of reversal and further litigation" (internal quotation marks omitted)).

First, the record on appeal consists of five volumes and, "[w]hen the record is narrowed down to the relevant parts" that are under review, we conclude that its length and complexity makes review of it not unduly burdensome. *See id.* Second, we are certain that the jury instruction was harmless. Mojica essentially conceded both at trial and on appeal that he committed the physical acts alleged by Salazar. Thus, the thrust of this case came down to whether Mojica lacked the necessary specific intent to commit the crimes alleged. Mojica testified that he was intoxicated and could not remember the majority of that evening after he returned to the apartment, whereas Salazar testified that he was inebriated but was aware of what he was doing. In addition to this testimony, the police officers who arrested Mojica testified that he "follow[ed] our instructions, and he was not falling over" as he exited his apartment and was arrested. They testified that Mojica was "aggressive" and "verbally combative," but that he responded to their questions coherently "despite his slurred speech." An officer further testified that Mojica "understood the gravity of the situation"

and his predicament as he communicated with the police officers. Given that other evidence corroborated Salazar's testimony, and also that the jury was properly instructed on the elements of the offenses, the State's burden of proof, and voluntary intoxication, we conclude the instructional error was harmless. Finally, considering the totality of the evidence of Mojica's guilt against the error in giving the "no corroboration" instruction, reversing and remanding for a new trial would be futile and costly because a new trial would reach the same result.

Accordingly, having reviewed the whole record and applied harmlessness review sua sponte to the relevant portions of the record, we conclude the erroneous jury instruction was harmless and that a new trial would undoubtedly lead to the same result.

*The district court did not violate Mojica's Sixth Amendment rights*

Mojica additionally argues that the district court violated his Sixth Amendment rights when it failed to hold a *Young* hearing after he requested new counsel be appointed. *See Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004) (detailing a three-part test for reviewing a denial of a motion for substitution of counsel: "(1) the extent of the conflict [between the defendant and counsel]; (2) the adequacy of the [court's] inquiry [into the defendant's conflict with counsel]; and (3) the timeliness of the motion" (internal quotation marks omitted)). We disagree, as Mojica argued for substitution mere days before the start of trial, and the district court had discretion to summarily deny the motion without a *Young* hearing. *Cf. id.* (stating that "[w]here a motion for new counsel is made considerably in advance of trial, the [district] court may not summarily deny the motion but must adequately inquire into the defendant's grounds for it" (alterations in original) (internal quotation marks omitted)).

*Mojica's remaining arguments lack merit*

Mojica also argues that (1) the district court abused its discretion in denying his request for a continuance; (2) there was insufficient evidence to support the use of a deadly weapon with respect to his coercion conviction; (3) the State relied on the same course of conduct for both his kidnapping and coercion convictions in contravention of *Mendoza v. State*, 122 Nev. 267, 274-75, 130 P.3d 176, 180-81 (2006); (4) the district court erred when it failed to provide a *Mendoza* instruction; (5) the district court erred in giving Jury Instruction Nos. 9, 20, and 27, as they failed to include proper transition language; (6) the State committed prosecutorial misconduct; and (7) cumulative error requires reversal. We have considered those arguments and conclude they lack merit.[3]

Accordingly, we ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.        _____, J.
Hardesty                            Cadish

---

[3]To the extent Mojica argues that his counsel provided ineffective assistance when she failed to secure the appearance and testimony of a neighbor who drank with him on the night in question, we decline to consider it on direct appeal, as a claim of ineffective assistance of counsel should be raised in a postconviction petition. *See Archanian v. State*, 122 Nev. 1019, 1036, 145 P.3d 1008, 1020-21 (2006) ("This court has repeatedly declined to consider ineffective-assistance-of-counsel claims on direct appeal unless the district court has held an evidentiary hearing on the matter or an evidentiary hearing would be needless.").

cc: Hon. Eric Johnson, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A